```
 1                IN THE UNITED STATES DISTRICT COURT

 2                    EASTERN DISTRICT OF MICHIGAN

 3   UNITED STATES OF AMERICA,      )
                                    ) Case No. 19-20014
 4        vs.                       )
                                    ) Bay City, Michigan
 5   SETH RYAN MOSE,                )
                                    ) May  15, 2019
 6        Defendant.                )
     _____) 1:40 p.m.
 7

 8                        TRANSCRIPT OF PLEA
                 BEFORE THE HONORABLE PATRICIA T. MORRIS
 9                  UNITED STATES MAGISTRATE JUDGE

10   APPEARANCES:

11   For the Government:  ANCA I. POP
                          United States Attorney
12                        Eastern District of Michigan
                          101 First Street
13                        Suite 200
                          Bay City, MI 48708
14
     For the Defendant:   JOHN E. MELTON
15                        Melton Law Firm
                          3078 Main Street
16                        Marlette, MI  48453
                          (989) 882-1182
17

18

19

20   Recorded by:       Kristen Castaneda

21   Transcribed by:    Carol M. Harrison, RMR, FCRR
                         1000 Washington Avenue
22                       Bay City, MI  48708

23

24          TRANSCRIPT PRODUCED FROM DIGITAL VOICE RECORDING
              TRANSCRIBER NOT PRESENT AT LIVE PROCEEDINGS
25
```

1          P R O C E E D I N G S

2          (At 1:40 p.m., proceedings commenced.)

3          (Defendant present.)

4          THE COURT:  Good afternoon.  The Court calls the case

5  of the United States versus Seth Mose, Case No. 19-20014.

6  Could I have the attorney appearances, please.

7          MS. POP:  Good afternoon, Your Honor, Anca Pop on

8  behalf of the United States.

9          THE COURT:  Thank you, Ms. Pop.

10          MR. MELTON:  John Melton for Mr. Mose.

11          THE COURT:  Thank you, Mr. Melton.  We are here

12  today, Mr. Mose, because you've indicated a willingness to

13  enter into a plea agreement, and toward that end, you did sign

14  a form whereby it described a process that although it's Judge

15  Ludington that will be sentencing you, you indicated that you

16  were okay with me conducting the plea hearing today.  Do you

17  still feel that way, sir?

18          THE DEFENDANT:  Yes, I do.

19          THE COURT:  Okay.  Very good.  I think your consent

20  is properly entered then, and we have an order of reference so

21  I think we're good to go.  If you don't mind then, Mr. Melton,

22  can I swear in your client?

23          MR. MELTON:  Yes.

24          THE COURT:  Okay.  Thank you.  To the best of your

25  ability, could you raise your right hand.  Thank you, sir.

1          (At 1:41 p.m., sworn by the Court.)

2          THE COURT:  Having been sworn, I have to warn you

3    that, of course, if you were to make a false statement, it

4    could be used against you in a separate case for perjury.  You

5    understand that, sir?

6          THE DEFENDANT:  Yes, I do.

7          THE COURT:  Okay.  Very good.  What is your full

8    name, Mr. Mose?

9          THE DEFENDANT:  Seth Ryan Mose.

10         THE COURT:  And how old are you?

11         THE DEFENDANT:  I'm 35.

12         THE COURT:  How far did you get in school?

13         THE DEFENDANT:  I got a GED.

14         THE COURT:  Good.  Do you have any difficulties

15    reading, writing or understanding English?

16         THE DEFENDANT:  No.

17         THE COURT:  Are you under the influence today of any

18    kind of medication or prescription drugs?

19         THE DEFENDANT:  No.

20         THE COURT:  Are you under the influence today of any

21    drugs or alcohol?

22         THE DEFENDANT:  No.

23         THE COURT:  Have you been treated recently for any

24    mental health issues?

25         THE DEFENDANT:  No, I haven't.

1              THE COURT:  Have you been treated recently for any

2    addiction to narcotic drugs of any kind?

3              THE DEFENDANT:  No.

4              THE COURT:  All right.  The record should reflect my

5    conclusion the defendant is capable of tendering a knowing

6    plea.  Do you agree, Ms. Pop?

7              MS. POP:  Yes, Your Honor.

8              THE COURT:  And Mr. Melton?

9              MR. MELTON:  I do.

10             THE COURT:  Mr. Mose, you are charged with and will

11   be pleading guilty to two counts.  Count One is distribution

12   and receipt of child pornography, and Count Three is coercion

13   and enticement of a minor.  Those carry with them maximum

14   possible -- maximum possible penalties of 20 years imprisonment

15   in Count One and life imprisonment in Count Three.

16             The maximum fines are not to exceed $250,000.  There

17   is mandatory life supervised release.  You'll also be subject

18   to the Sex Offender Registry and Notification Act, which could

19   affect places where you can live and work, and you also are

20   going to be subject to forfeiture of any property that you used

21   in conjunction with the commission of these offenses.  Do you

22   understand the maximum penalties for these offenses?

23             THE DEFENDANT:  Yes, I do.

24             THE COURT:  You have Mr. Melton with you here today,

25   and he's represented you in this case.  Do you feel like you've

1   had enough time to talk to him and to go over the Rule 11 plea

2   agreement?

3           THE DEFENDANT:  Yes, I do.

4           THE COURT:  Do you feel like you understand the terms

5   of the agreement?

6           THE DEFENDANT:  I do.

7           THE COURT:  And are you satisfied with his advice?

8           THE DEFENDANT:  Yes.

9           THE COURT:  Good.  If you plead guilty, of course,

10  you're giving up important rights, most of which that have to

11  do with a trial, because by pleading guilty you won't have a

12  trial before either a judge or a jury.  You understand that,

13  sir?

14          THE DEFENDANT:  I do.

15          THE COURT:  In addition, at trial you would have had

16  the right to be presumed innocent.  It would be up to the

17  Government to prove you guilty beyond a reasonable doubt as to

18  each of the essential elements of the offense, but by pleading

19  guilty, you're giving up that right to be presumed innocent at

20  trial and to hold the Government to its proofs.  Do you

21  understand that also, sir?

22          THE DEFENDANT:  Yes, I do.

23          THE COURT:  In addition, at trial you would have the

24  right to continued assistance of counsel, and if you couldn't

25  afford counsel, we would make sure that you had Court-appointed

1   counsel to represent you.  But by pleading guilty, you're

2   giving up that right as well.  Do you also understand that?

3            THE DEFENDANT:  Yes, I do.

4            THE COURT:  In addition, at trial you'd have the

5   right to see and hear all the witnesses that the Government

6   would bring against you in their case against you, and your

7   lawyer could question those witnesses.  But by pleading guilty,

8   you're giving up that Sixth Amendment right to confront the

9   witnesses and to allow your lawyer to cross-examine them.  Do

10  you also understand that, sir?

11           THE DEFENDANT:  Yes, I do.

12           THE COURT:  In addition, at trial if you wanted to

13  subpoena witnesses for your defense, the Court would make sure

14  that those witnesses showed up at trial, but by pleading

15  guilty, you're giving up the right to compel witnesses for your

16  own defense.  Do you also understand that, sir?

17           THE DEFENDANT:  Yes, ma'am.

18           THE COURT:  At trial you'd have that continued right

19  to remain silent, you wouldn't have to testify, and you

20  wouldn't have to present a defense of any kind, and if you

21  chose not to present a defense, or not to testify, or both, the

22  Court would instruct any jury that they couldn't hold that

23  against you, because you don't have to prove anything at trial.

24  It's up to the Government to prove you guilty beyond a

25  reasonable doubt, but by pleading guilty, you're giving up

1    those rights as well.  Do you understand that, sir?

2              THE DEFENDANT:  Yes.

3              THE COURT:  And finally, of course, and on the other

4    hand, if you wanted to testify at your own trial, or if you

5    wanted to present a defense at your own trial, you could, but

6    by pleading guilty, you're giving up those rights as well.  Do

7    you understand that, sir?

8              THE DEFENDANT:  Yes.

9              THE COURT:  Very good.  With that, then, Ms. Pop,

10   would you mind going over the Rule 11 plea agreement for us.

11             MS. POP:  Sure.  Pursuant to Rule 11 of the Federal

12   Rules of Criminal Procedure, the defendant, Seth Ryan Mose, and

13   the Government agree as follows:

14             Defendant will enter a plea of guilty to Counts One

15   and Three of the first superceding indictment, which charges

16   him with distribution and receipt of child pornography and

17   coercion and enticement of a minor in violation of 18 USC

18   2252A(a)(2) and (b)(1) and 18 USC 2422(b) and 2 .

19             The elements of Count One are:

20             That the defendant knowingly distributed and received

21   any child pornography, which is any visual depiction of a minor

22   engaged in sexually explicit conduct as defined by 18 USC 2256.

23   The defendant knew that the material was or contained child

24   pornography, by using any means or facility of interstate or

25   foreign commerce, the child pornography was shipped or

 1    transported in or affecting interstate or foreign commerce by

 2    any means including by computer.

 3            The elements of Count Three are as follows:

 4            The defendant knowingly used a facility or means of

 5    interstate commerce to persuade, induce, entice or coerce an

 6    individual under the age of 18 to engage in sexual activity,

 7    the defendant believed that such individual was less than 18

 8    years of age, and the defendant could have been charged with a

 9    criminal offense for engaging in the specified sexual act.

10            The following facts are sufficient and accurate basis

11    for the defendant's guilty pleas.  Between February 2nd, 2018

12    and June 12, 2018, while living in or near Gladwin, Michigan,

13    Eastern District of Michigan, Northern Division, the defendant,

14    Seth Ryan Mose, knowingly distributed and received child

15    pornography as defined in Title 18 United States Code Section

16    2256, by using his computer, cellular telephone and the

17    internet.

18            Searches of Mose's cellular telephone, laptop and

19    Dropbox, Google and Yahoo accounts revealed that Mose

20    possessed, distributed or received approximately 386 -- 87

21    photographs and 102 videos containing visual depictions of

22    sexually explicit conduct involving minors.

23            The images depicted children in various states of

24    undress engaging in sexual acts, some with adults or posing in

25    a sexually suggestive manner, to include sadistic depictions

1  such that an outsider would perceive the images as depicting

2  the infliction of pain or humiliation on the minors.  A

3  majority of the images depict prepubescent children, infants

4  and toddlers.  Mose knew the material he possessed, received

5  and distributed contained child pornography.

6        He shared child pornography with other individuals on

7  various social networks and chat rooms using the internet, his

8  laptop and cellular telephone in exchange for other child

9  pornography.

10        According to the National Center for Missing and

11  Exploited Children record, at least 72 of the images contained

12  an identified child.  In private chats with other individuals,

13  Mose stated he raped a 12-year-old and one or more 8-year-old

14  girls and provided explicit details.  He also often talked

15  about planning to snatch a girl and take her to an isolated

16  location in Gladwin for sexual exploitation.

17        In an interview on August 10, 2018, near his

18  residence in Midland, Eastern District of Michigan, Mose

19  admitted to possessing, receiving and sharing child pornography

20  using his Dropbox, Yahoo, Google, Kik, Whisper and Tumblr

21  accounts.  He noted he traded child pornography but after

22  awhile, it started to bother him what was going on in the

23  conversations.

24        He estimated his criminal conduct started several

25  years ago.  The number of child pornography files he had shared

is in the thousands and the number he had received is in the

tens of thousands.  He stated he regularly deleted the child

pornography and that several of his online accounts were

disabled because of his illegal activity.

He admitted to receiving and sharing child

pornography while living in Gladwin and elsewhere from his cell

phone which connected to the internet.  He stated he

masturbated to child pornography and his youngest age

preference was seven or eight.

Mose consented to a search of his Apple iPhone, Model

A1661, Serial No. FCJ30BAHFXW, Toshiba laptop Serial

No. 6E312867P with a hard drive of 750 gigabytes and Western

Digital 320 gigabyte hard drive Model WD3200BEK, Serial No.

WX90A99N9123.  The iPhone and the laptop contained child

pornography files and the hard drive contained a torrent file

entitled "teen lolitas" that was located in the unallocated

space on the device.

Mose also admitted to having sexual contact with a

12-year-old girl in Ohio in the fall of 2014 when he was 30

years old and resided in Monroe, in the Eastern District of

Michigan.  One of the individuals with whom he was trading

child pornography on Kik found out where he lived and gave him

a 12-year-old girl's Kik user name because she lived close to

him.

Mose started communicating with the girl, hereinafter

1  MV on Kik and Skype, using his cell phone, computer and the

2  internet.  In order to befriend MV, they talked about Goth art

3  and MV's favorite animes and My Little Pony collection.  Mose

4  knew MV was only 12 years old but sent her multiple pictures of

5  his penis and requested nude pictures of MV.  He claimed that

6  although she had sent him many pictures of herself, he no

7  longer had the device he used to communicate with her and the

8  Kik account was disabled.

9        After talking over the internet daily for

10  approximately one to two weeks, Mose requested to see MV to

11  show her some stuff in person.  One night in September, 2014,

12  when her mother was not at home, and her grandparents looked

13  after her, Mose visited MV at her house in Ohio.

14        Mose drove for approximately two and a half hours

15  from Monroe MV's house where he arrived at around 1:00 a.m.  MV

16  and Mose went in the horse pasture behind the barn at her

17  residence.  After talking for a while, Mose told MV he wanted

18  to have sex and forced her head down by grabbing her hair so

19  forcefully that it bruised her scalp to perform oral sex on

20  him.  Mose also took off her clothes and performed oral sex on

21  her.  He also tried to penetrate her vagina with his penis, he

22  brushed the opening and slightly penetrated.  After the sexual

23  conduct, they talked for a little bit and he left.  Mose

24  messaged MV after this and said he did not want to talk to her

25  anymore and deleted his Kik account.  They never communicated

1   again after that.

2        Mose could have been charged with rape under the Ohio

3   Revised Code Section 2907.02(A)(1)(b), which provides that no

4   person shall engage in sexual contact with another who is not

5   the spouse of the offender or who is the spouse of the offender

6   but is living separate and apart from the offender when any of

7   the following applies; that the other person is less than 13

8   years of age, whether or not the offender knows of the age of

9   the other person.

10        For the purposes of this plea agreement, the parties

11  stipulate and agree that the guideline calculations in the

12  attached worksheets are correct with the exception of the

13  enhancements under USSG 2G2.2(b)(3)(B).  The Government

14  believes that the defendant distributed child pornography in

15  exchange for any valuable consideration, which is other child

16  pornography, and a five-level enhancement is appropriate under

17  the guideline section.  However, defendant reserves the right

18  to argue that an enhancement under this section should not

19  apply.  The parties stipulate to the accuracy of the offense

20  scoring in the attached guideline worksheets in all other

21  respects.

22        The Government recommends that the Court determine

23  that the defendant's guideline range is 235 to 293 months as

24  set forth in the attached worksheets.  The defendant recommends

25  that the Court determine that his guideline range is 151 to 188

1  months.

2  The Court is not bound by either party's

3  recommendation concerning the guideline range, and the

4  defendant understands that he will not have the right to

5  withdraw his guilty plea if the Court does not follow his

6  recommendation.

7  If the Court finds that the defendant's criminal

8  history category is higher than reflected on the attached

9  worksheets, or that the offense level should be higher because

10  after pleading guilty the defendant made any false statement to

11  or withheld information from his probation officer, otherwise

12  demonstrated a lack of acceptance of responsibility for his

13  offense, or obstructed justice or committed any crime, and if

14  any such finding results in a guideline range higher than 235

15  to 293 months, or 151 to 188 months respectively, the higher

16  guideline range becomes the agreed range.

17  However, if the Court finds that the defendant is a

18  career offender, an armed career criminal or a repeat and

19  dangerous sex offender as defined under the sentencing

20  guidelines or other federal law, and that finding is not

21  already reflected in the attached worksheets, this paragraph

22  does not authorize a corresponding increase in the agreed

23  range.

24  Neither party may take a position concerning the

25  applicable guidelines that is different from any position of

that party as reflected in the attached worksheets, except as
necessary to the Court's determination regarding subsections 1
and 2 above.

Except as provided in the next sentence, pursuant to
Federal Rule of Criminal Procedure 11(c)(1)(C), the sentence of
imprisonment in this case may not exceed the top of the
sentencing guideline range as determined by paragraph 2B.
However, if the Court must impose a sentence of imprisonment --
the Court must impose a sentence of imprisonment on Count One
of at least five years and not more than 20 years imprisonment
and on Count Three of at least 10 years and not more than life
imprisonment.

A term of supervised release follows the term of
imprisonment.  The Court must impose a term of supervised
release which is in this case is life.

The agreement concerning imprisonment described above
in paragraph 3A does not apply to any of the terms of
imprisonment that results from any later revocation of
supervised release.

The defendant will have to pay a special assessment
of $5,200.  There is no agreement as to fines, and the Court
may order restitution to every identifiable victim of the
defendant's offense in all other relevant conduct.

There is no agreement on restitution.  If the Court
orders restitution, the Court will determine who the victims

are, any amounts of restitution they're owed.  As part of this

agreement, the defendant agrees to forfeit his interest in any

visual depictions of child pornography, and all of the property

that was seized from the defendant containing child

pornography.

In entering into this agreement with respect to

forfeiture, the defendant expressly waives his right to have a

jury determination of the forfeitability of his interest in

these assets.

Defendant also understands that by pleading guilty in

this case he will be required to register as a sex offender

under both federal and state registration requirements.  As a

condition of his release from prison or supervised release in

this case, the defendant will be obligated to promptly register

under the Federal Sex Offender Registry.  The defendant may

also be required to register under the law of the state in

which he resides, as well as any state where he has significant

contacts.  And the defendant further understands that he will

be required to maintain and update his registration for at

least 20 years and potentially for the rest of his life.

The Government may withdraw from this agreement if

the Court finds the correct guideline range to be different

than is determined by paragraph 2B.  The defendant may withdraw

from this agreement, and may withdraw his guilty plea, if the

Court decides to impose a sentence higher than the maximum

1  allowed by paragraph 3.  This is the only reason for which the

2  defendant may withdraw from this agreement.  The Court shall

3  advise defendant that if he does not withdraw his guilty plea

4  under this circumstance, the Court may impose a sentence

5  greater than the maximum allowed by paragraph 3.

6       The defendant waives any right he may have to appeal

7  his conviction on any grounds.  If the defendant's sentence of

8  imprisonment does not exceed 293 months, the defendant also

9  waives any right he may have to appeal his sentence on any

10 grounds.  If the defendant's sentence of imprisonment is at

11 least 155 months, the Government waives any right it may have

12 to appeal the defendant's sentence.  This waiver does not bar a

13 filing of a claim of ineffective assistance of counsel in

14 court.

15      If the defendant is allowed to withdraw his guilty

16 pleas, or if any conviction entered pursuant to this agreement

17 is vacated, the Court shall, on the Government's request,

18 reinstate any charges that were dismissed as part of this

19 agreement.  If additional charges are filed against the

20 defendant within six months after the date of the order

21 vacating the defendant's conviction, or allowing him to

22 withdraw his guilty pleas becomes final, which charges relate

23 directly or indirectly to the conduct underlying the guilty

24 pleas, or to any conduct reflected in the attached worksheets,

25 the defendant waives his right to challenge the additional

1  charges on the ground that they were not filed in a timely

2  manner, including any claim that they were filed after the

3  limitations period expired.

4          The defendant understands that his convictions here

5  may carry additional consequences under federal and state law

6  including potential loss of the right to vote, right to carry a

7  firearm, right to serve on a jury and inability to sold certain

8  licenses or to be employed in certain fields.

9          This agreement does not bind any Government agency

10 except the United States Attorney's Office for the Eastern

11 District of Michigan.  This agreement, which is -- which

12 includes all documents that it explicitly incorporates, is the

13 complete agreement between the parties.

14         THE COURT:  Thank you, Ms. Pop.

15         Mr. Mose, as she was going through the plea

16 agreement, was there anything that surprised you or that you

17 didn't expect to hear?

18         THE DEFENDANT:  No, Your Honor.

19         THE COURT:  On the other hand, is there something

20 that's very important to you that you're counting on that

21 nobody has talked about yet?  In other words, is there anything

22 missing?

23         THE DEFENDANT:  No, I don't believe so.

24         THE COURT:  Okay.  Very good.  Just to make sure that

25 you understand some of the important things that you're giving

1  up in this agreement, you are giving up your right to appeal

2  your conviction on any grounds, so that means that you would

3  not be successful in arguing later that you pled guilty today

4  only because your lawyer said it was a good idea or a good

5  deal, you're not really guilty, you just pled guilty to get it

6  over with, you didn't understand that you could be sentenced

7  this harshly as you ended up being sentenced.  None of those

8  types of arguments will be successful.  Do you understand that,

9  Mr. Mose?

10         THE DEFENDANT:  Yes, I do.

11         THE COURT:  So for that reason, and because it is an

12  important day for you, we do want to make sure that you

13  understand the agreement that you've entered into, the terms of

14  the agreement and the consequences that could flow from the

15  terms of the agreement.  So even though I'm sure it's not the

16  most comfortable setting for you here, I do want to ask you to

17  commit to me that if you did have any questions about the terms

18  of your agreement or what could happen to you, because of the

19  terms of the agreement, that you would bring those questions

20  forward to me today, either to me personally or through your

21  lawyer.  Can you do that, Mr. Mose?

22         THE DEFENDANT:  Yes, I can.

23         THE COURT:  And you feel like you could do that

24  today?

25         THE DEFENDANT:  Yes, I can.

1          THE COURT:  Very good.  So you're also giving up your

2   right to appeal your sentence as long as Judge Ludington

3   doesn't sentence you any higher than 293 months.  Do you

4   understand that, sir?

5          THE DEFENDANT:  I do.

6          THE COURT:  So that one's a hard number, but you're

7   also giving up your right to withdraw from the agreement and

8   withdraw your guilty plea, as long as Judge Ludington doesn't

9   sentence you higher than the top of the guidelines.  Do you

10  understand that?

11         THE DEFENDANT:  Yes, I do.

12         THE COURT:  And so that -- the top of the guidelines

13  is not yet a really known number, because you have a dispute

14  going on between the Government's -- the Government is going to

15  argue that they think the proper guideline range is 235 to 293

16  months, and your lawyer is going to argue for you that you

17  think the proper guideline range is 151 to 188 months.  You do

18  understand, Mr. Mose, that that's ultimately the decision that

19  Judge Ludington is going to make, right?

20         THE DEFENDANT:  Yes, I do.

21         THE COURT:  And you -- as included in this agreement,

22  you won't be able to complain about that.  Whichever way he

23  decides, that's what rules, you understand that --

24         THE DEFENDANT:  Yes, I do.

25         THE COURT:  -- also?  Okay.  And as long as you don't

1   get sentenced higher than whatever the applicable guideline

2   range is, whether it's 293 months, 188 months, or some other

3   number, as long as you don't get sentenced higher than the top

4   of the guideline range, you won't be able to withdraw your plea

5   or withdraw from the agreement.  Do you also understand that,

6   sir?

7           THE DEFENDANT:  I do.

8           THE COURT:  Okay.  Very good.  As Ms. Pop was going

9   through the agreement, she explained that there were some

10  things that are within your control if you were to commit

11  another crime, obstruct justice, make false statements or

12  withhold information from your probation officer or show that

13  you're not accepting responsibility, that can also have an

14  adverse effect on your guideline range.  That could result in

15  your guideline range being higher.  Do you understand that

16  also?

17          THE DEFENDANT:  Yes, I do.

18          THE COURT:  And, once again, I, you know, don't mean

19  to hammer it, but as long as you don't get sentenced higher

20  than whatever the top of the guideline range is, you won't be

21  able to withdraw your plea or withdraw from the agreement, and

22  you understand that?

23          THE DEFENDANT:  I do.

24          THE COURT:  Okay.  Very good.  And I think in going

25  through the maximum penalties, sir, I forgot to mention the

1  special assessment of $5,200, which will be due at sentencing.

2  Do you understand you will be exposed to that as well?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Okay.  Has anyone made any promises to

5  you, Mr. Mose, other than those that are stated here in the

6  plea agreement?

7          THE DEFENDANT:  No, they have not.

8          THE COURT:  Good.  Has anyone promised you Judge

9  Ludington's definitely going to sentence you to a certain

10 number of months?

11         THE DEFENDANT:  No, they have not.

12         THE COURT:  He does have the ability to sentence you

13 to whatever he thinks is appropriate, which could be under the

14 guidelines, inside the guidelines or above the guidelines, up

15 to the statutory maximum, but he has to sentence you to the

16 mandatory minimum of five years on Count One and the mandatory

17 minimum of 10 years.  Do you understand all of that?

18         THE DEFENDANT:  I do.

19         THE COURT:  Is it fair to say, then, that this plea

20 agreement represents the entire agreement between you and your

21 lawyer and the Government?

22         THE DEFENDANT:  Yes.

23         THE COURT:  Has anyone used any force or threats of

24 violence to try to make you plead guilty today, Mr. Mose?

25         THE DEFENDANT:  No.

1          THE COURT:  Are you pleading guilty freely and

2   voluntarily?

3          THE DEFENDANT:  I am.

4          THE COURT:  And are you pleading guilty because you

5   are guilty?

6          THE DEFENDANT:  Yes.

7          THE COURT:  And is it your choice and your choice

8   alone to plead guilty today?

9          THE DEFENDANT:  Yes.

10          THE COURT:  Very good.  Mr. Melton, would you like to

11   question your client as to the factual basis.

12          MR. MELTON:  The factual basis is set forth by

13   Ms. Pop, correct?

14          THE DEFENDANT:  Yes.

15          MR. MELTON:  And you do admit -- there's an

16   allegation that you had child pornography.  Do you admit that

17   you had that?

18          THE DEFENDANT:  Yes, I do.

19          MR. MELTON:  And that you admit that you had engaged

20   in sexual activity with a woman that -- I'm sorry, with a

21   12-year-old girl?

22          THE DEFENDANT:  I do.

23          MR. MELTON:  Okay.  And that was in Ohio?

24          THE DEFENDANT:  Correct.

25          MR. MELTON:  Okay.  And that the child pornography,

1   you knew it was child pornography?

2           THE DEFENDANT:  I did.

3           MR. MELTON:  And you knew it was illegal?

4           THE DEFENDANT:  Yes.

5           MR. MELTON:  Okay.  And you knew the young woman

6   identified in the -- the girl identified in the plea agreement

7   was 12 years old?

8           THE DEFENDANT:  Yes.

9           MR. MELTON:  And at the time you were 30 years old?

10          THE DEFENDANT:  That's correct.

11          MR. MELTON:  And you were residing in -- within -- in

12  Monroe within the Eastern District of Michigan?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Where was he living, Mr. Melton?  I was

15  thinking he was in Midland or Gladwin.

16          MR. MELTON:  This says --

17          THE DEFENDANT:  At the time with the young girl, I

18  was living in Monroe.

19          THE COURT:  Okay.

20          THE DEFENDANT:  When the police came to investigate

21  me, I was living in Midland.

22          THE COURT:  But you received some of the -- received

23  and distributed the child pornography while you were living in

24  Midland or Gladwin area?

25          THE DEFENDANT:  Yes, that's correct.

1          THE COURT:  Okay.  In order to receive and distribute

2    the child pornography, Mr. Mose, you were using a computer; is

3    that correct?

4          THE DEFENDANT:  I was using my cell phone.

5          THE COURT:  Cell phone, okay.  Which had internet

6    capabilities?

7          THE DEFENDANT:  Yes, that's correct.

8          THE COURT:  Okay.  Very good.  So that -- you would

9    agree that is something that affects interstate commerce?

10         THE DEFENDANT:  Yes.

11         THE COURT:  Good.  In addition, when it comes to the

12   12-year-old girl situation, you did use a means of interstate

13   commerce, perhaps your cell phone again; is that correct --

14         THE DEFENDANT:  Yes.

15         THE COURT:  -- to entice and persuade her to have the

16   sexual activity with you, would that also be correct?

17         THE DEFENDANT:  Yes.

18         THE COURT:  Okay.  And you were aware at that time

19   that that was a type of sexual activity that could have exposed

20   you to basically state court charges?

21         THE DEFENDANT:  Yeah.

22         THE COURT:  Okay.  Very good.

23         Ms. Pop, is there anything further?

24         MS. POP:  As to the timing for the receipt and

25   distribution, that it was between February 2nd, 2018 and June

1  12th, 2018, and that it was receipt and distribution, not just

2  having child pornography?

3          THE DEFENDANT:  Pardon?  I couldn't quite hear you.

4          THE COURT:  So just -- Ms. Pop had asked about the

5  timing of it, that the receipt and distribution occurred

6  between February 2nd, 2018, and June 12th, 2018 --

7          THE DEFENDANT:  Yes.

8          THE COURT:  -- is that correct?

9          THE DEFENDANT:  Yes.

10          THE COURT:  And then I think we did address it, but

11  she just wanted to make sure that we had -- that you had

12  acknowledged that you had distributed and received the child

13  pornography, not just that you possessed it --

14          THE DEFENDANT:  Yes.

15          THE COURT:  -- also correct, Mr. Mose?

16          THE DEFENDANT:  Yes.

17          THE COURT:  Okay.  Thank you.  And I think we did hit

18  that one.  And then as we probably didn't get the timing as to

19  your -- the time in Ohio was in the fall of 2014; is that

20  correct, Mr. Mose?

21          THE DEFENDANT:  Yes, that's correct.

22          THE COURT:  Very good.  Ms. Pop, anything further?

23          MS. POP:  I believe this is it.  Thank you.

24          THE COURT:  Thank you.  Mr. Mose, we've talked about

25  the charges, the possible penalties, the rights you have and

1  those that you've indicated you would be willing to give up.

2  With all that in mind, how do you want to plead today, sir?

3       THE DEFENDANT:  Guilty.

4       THE COURT:  I find the defendant is competent to

5  tender a plea, that his plea was knowingly, voluntarily and

6  intelligently made and that the offenses to which he has pled

7  are supported by an independent basis in fact containing each

8  of the essential elements of the offenses.

9       I will, therefore, order preparation of a presentence

10  investigation report.  I will recommend that the defendant's

11  plea be accepted, that he be adjudged guilty and have sentence

12  imposed subject to the sentencing judge's review and

13  consideration of the plea agreement pursuant to Rule 11(c) of

14  the federal rules.

15       Ms. Pop, are you satisfied with compliance with

16  Rule 11?

17       MS. POP:  Yes, Your Honor.

18       THE COURT:  Thank you.  And, Mr. Melton, are you also

19  satisfied?

20       MR. MELTON:  Satisfied.

21       THE COURT:  Very good.  The next step for you then,

22  Mr. Mose, is you'll be referred to probation.  You'll have an

23  interview with them, with your attorneys present, and you want

24  to make sure that you stay candid and truthful with them as you

25  have here because as we talked about, if you were to make any

1   false statements, withhold information or show a lack of

2   acceptance of responsibility, that could have a deterrent, a

3   bad effect, on your sentencing guideline range.  Do you

4   understand that, sir?

5              THE DEFENDANT:  I do.

6              THE COURT:  Okay.  Very good.  I wish you good luck

7   with that process.  We'll take a recess until the next case.

8   Thank you.

9              (At 2:11 p.m., court recessed.)

10

11

12

13

14                    * * * * *

15               C E R T I F I C A T E

16     I certify that the foregoing is a correct transcript
       from the digital sound recording of the proceedings in
17     the above-entitled matter.

18

19                         _Carol M. Harrison_

20   Date: 9-12-2019      Carol M. Harrison, RMR, FCRR
                          Official Court Reporter
21                        United States District Court
                          Eastern District of Michigan
22                        1000 Washington Avenue
                          Bay City, MI  48708
23

24

25

US v. Mose - Change of Plea - May 15, 2019