```
 1                  IN THE UNITED STATES DISTRICT COURT
                       EASTERN DISTRICT OF MICHIGAN
 2
    UNITED STATES OF AMERICA            )Bay City, Michigan
 3                                      )September  12, 2019
             vs.                        )3:50 p.m.
 4                                      )
    SETH RYAN MOSE,                     )
 5                                      )Case No. 19-20014
             Defendant.                 )
 6  _____    )

 7
                         TRANSCRIPT OF SENTENCING
 8              BEFORE THE HONORABLE THOMAS L. LUDINGTON
                       UNITED STATES DISTRICT JUDGE
 9
    APPEARANCES:
10
    For the Government:   ANCA I. POP
11                        United States Attorney
                          Eastern District of Michigan
12                        101 First Street
                          Suite 200
13                        Bay City, MI 48708

14  For the Defendant:    JOHN E. MELTON
                          Melton Law Firm
15                        3078 Main Street
                          Marlette, MI  48453
16                        (989) 882-1182

17

18

19

20

21  Court Reporter:       Carol M. Harrison, RMR, FCRR
                          1000 Washington Avenue
22                        Bay City, MI  48708

23           Proceedings reported by stenotype reporter.
            Transcript produced by Computer-Aided Transcription.
24

25
```

P R O C E E D I N G S

1

2          (At 3:50 p.m., proceedings commenced.)

3          (Defendant present.)

4          THE CLERK:  United States of America versus Seth

5  Mose, Case No. 19-20014.

6          THE COURT:  Good afternoon, counsel.  If we could

7  have your introductions, please.

8          MS. POP:  Good afternoon, Your Honor.  Anca Pop on

9  behalf of the United States.

10         THE COURT:  Ms. Pop.

11         MR. MELTON:  John Melton for Mr. Mose.

12         THE COURT:  Good afternoon, Mr. Melton, and good

13  afternoon, Mr. Mose.

14         We are present for Mr. Mose's sentencing hearing.

15  The Court's records reflect the fact that he entered a guilty

16  plea before Judge Morris on May the 15th of this year, later

17  accepted on report and recommendation by the Court.  He entered

18  his guilty plea to two counts.

19         Count One of the first superceding indictment charged

20  him with the offense of distribution and receipt of child

21  pornography.  It is a Class C felony any offense under federal

22  law punishable by a minimum term of five years in custody and

23  up to 20 years in custody.  The Court is also obligated to

24  impose a term of no less than five years of supervised release

25  following the term of custody and up to lifetime supervised

1  release.  We're also statutorily authorized to impose a fine at
2  sentencing of up to $250,000.

3          The second offense to which he entered a plea was
4  Count Three of the first superceding indictment charging him
5  with the class A federal offense of coercion and enticement of
6  a minor.  The offense carries a minimum term of custody of 10
7  years and up to lifetime custody.  The Court is authorized to
8  impose a term of no fewer than five years of supervised release
9  and up to lifetime supervised release, and the statute also
10  provides for a fine of up to $250,000.

11          After Mr. Mose entered his guilty plea to the two
12  offenses, he was interviewed by Probation Officer Burns, who in
13  turn completed a presentence investigation report.  Mr. Burns
14  joins us today.  Good afternoon, sir.

15          MR. BURNS:  Good afternoon, Your Honor.

16          THE COURT:  The report was completed in July and
17  circulated for review.

18          Mr. Melton, with the exception of the one guideline
19  variable to which exception was taken and that we will give
20  attention to, any additions or corrections to the report that
21  have not already been resolved with Mr. Burns?

22          MR. MELTON:  No, no, Your Honor.

23          THE COURT:  There was a challenge to the five-level
24  increase for the -- based on the distribution in exchange for
25  valuable consideration.  The objection was carefully explained

1   by defense counsel in the objection itself.  Separately the

2   Government has completed a recitation of a particular

3   transaction and it's included in the sentencing memorandum, but

4   as a result of the fact that it -- it is a bit difficult for

5   the Court to read, I've had a brief opportunity, along with

6   defense counsel, to see if we could have that memorialized in

7   some additional way.  Your suggestion, ma'am?

8             MS. POP:  Yes, Your Honor.  We can either introduce

9   it through me reading it or we have the case agent here who

10  could get on the stand and present this dialogue between the

11  defendant and another individual and the trade of child

12  pornography.

13            THE COURT:  Would you like to take one part and the

14  agent the other part?

15            MS. POP:  Sure.

16            THE COURT:  All right.  I -- there's no particular

17  need to have anyone sworn or to use the witness stand in this

18  situation.  Can you explain to us contextually what this

19  exchange was and how it was located and identified.

20            MS. POP:  Yes, Your Honor.  This was taken from an

21  extraction report from the defendant's cell phone.  The

22  extraction report includes chat conversations from a Kik app,

23  which is a chat room application and social media, and this

24  particular snippet of the conversation focuses on the dialogue

25  between the defendant who is identified with the user name

US v. Mose - Sentencing - September 12, 2019

1  Mr. Dominic Black, and the user dannyjacobs92 Dee Jay.

2          There's also images of child pornography that were

3  traded during this chat, and I believe we also have those

4  images, the files themselves.

5          THE COURT:  Any objection to the method of at least

6  memorializing the materials?

7          MR. MELTON:  No, Your Honor.

8          THE COURT:  If you would, please.

9          MS. POP:  So I think I will probably read the

10  defendant's part, and I will have Agent Zapolski or Officer

11  Zapolski read dannyjacobs92's part.

12          And I know in the sentencing memorandum, I provided

13  snippets of this conversation and instead of the whole

14  conversation that is a little bit longer, but for purposes of

15  this hearing we will quickly go through all of it.  It

16  shouldn't be long.

17          THE COURT:  All right.  Thank you.

18          MS. POP:  And we'll start with the conversation, this

19  is on March 3rd, 2018 at 10:30 p.m.  I believe this would be

20  Michigan time.

21          (Chat conversation read as follows:)

22          OFFICER ZAPOLSKI:  Yes.

23          Dannyjacobs:  Hey, bro.  Read your post on forum.

24  I'm guessing you don't have kids yourself, you're just wanting

25  to get involved with others that do, question mark.

1        MS. POP:  Yeah, that's right actually.  You'd be

2  amazed the number of people who don't seem to understand that.

3        OFFICER ZAPOLSKI:  LOL.

4        I'm not from anywhere near so was hoping to trade

5  with someone, a frowny face.

6        MS. POP:  Ah okay.  I don't do much trading anymore.

7        OFFICER ZAPOLSKI:  Fair enough.  I'm sick of the same

8  old shit that's okay but -- sorry, that's out there so I have

9  some pics of my girl but yeah trying to make the deal sweet for

10  both sides obviously.

11        MS. POP:  Exactly.  That's why I got out of doing

12  trades.  Just same stuff over and over again.  I'd rather do

13  irl now though.  LOL.

14        OFFICER ZAPOLSKI:  It's fun.

15        MS. POP:  Oh I bet it is.  Making me jealous.

16        OFFICER ZAPOLSKI:  No judgment.  What age you like?

17        MS. POP:  Twelve or less.  You?

18        OFFICER ZAPOLSKI:  Yep, a bit less actually.  Ten to

19  12, they're developing and have tight bodies and little

20  titties, but they take a lot of convincing.  Younger is a lot

21  more naughtier and riskier but easier.

22        MS. POP:  That's very true.  I had the option I

23  got -- if I had the option, I'd get like four to five.  How old

24  is your girl?

25        OFFICER ZAPOLSKI:  Tad older than that.

US v. Mose - Sentencing - September 12, 2019

1    MS. POP:  Still not bad at all.  How much do you do
2  with her?
3    OFFICER ZAPOLSKI:  Not much.  She's at that age where
4  she is likely to tell.
5    MS. POP:  Okay.  That makes sense.
6    OFFICER ZAPOLSKI:  But there's some pics of her.
7  There's also my very, very young niece I squirted in just so I
8  could have the satisfaction of having done that.  And there's a
9  12-year-old I'm chatting with that sends me vids occasionally.
10    MS. POP:  Very nice.  The niece sounds like what I'm
11  really hoping for.  You manage to fit a good amount of you in
12  or just the tip?
13    OFFICER ZAPOLSKI:  Would you like to see?
14    MS. POP:  Hell yeah, if you're willing to share.
15    OFFICER ZAPOLSKI:  Got to warn you it's very young.
16    MS. POP:  That's not an issue at all to me.
17    OFFICER ZAPOLSKI:  Do you still have anything left to
18  trade to prove you're genuine?
19    MS. POP:  I may.  I'd have to look for it though.
20    OFFICER ZAPOLSKI:  Okay.  But this stays between us.
21    MS. POP:  Yeah, no problem.
22    OFFICER ZAPOLSKI:  Danny then sends an image file --
23  two image files.
24    MS. POP:  Very nice.
25    OFFICER ZAPOLSKI:  Turn you on?

```
1            MS. POP:  Yeah, just a bit.  LOL.
2            OFFICER ZAPOLSKI:  Danny then sends another image
3  file.
4            MS. POP:  Mr. Dominic Black, defendant, sends an
5  image file.
6            OFFICER ZAPOLSKI:  That pic is a bit of photo magic
7  though.  You can't get the whole thing in so it's just resting
8  on her ass cheeks to look like it fit in, LOL.
9            MS. POP:  That's all I was able to find close to
10 that.
11           (Reading of chat concluded.)
12           THE COURT:  Any other argument concerning the
13 applicability of 2G2.2?
14           MR. MELTON:  Mr. Mose's explanation is that in this
15 world, that fortunately he doesn't want to belong to anymore,
16 that this -- the intent of that was to make sure you're not
17 talking to a cop and have credibility.
18           The intention really wasn't to exchange anything in
19 exchange for valuable consideration.  It's just the intent of
20 that is to -- this is what they do in this world, to make sure
21 you're not talking to a -- give each other credibility, make
22 sure they're not talking to an undercover police officer, so
23 that's his explanation for what the intent was, not to exchange
24 anything.  Something -- you know, something for something else.
25 It was just basically like a test.
```

1            THE COURT:  Which would be, in this case, an

2  exchange.

3            MR. MELTON:  Pardon me?

4            THE COURT:  Which would, in this case, be an

5  exchange.

6            MR. MELTON:  That's what it -- that's what it

7  appears, Judge, but it is -- Mr. Mose's explanation is that

8  that's really -- the intent of it is just to prove the other

9  person's not a cop.  If you -- I guess if you're agreeing to

10 talk about this stuff, then apparently you're not a cop, so

11 that's his explanation.

12           THE COURT:  Thank you.  Government dispute the legal

13 argument?

14           MS. POP:  Well, Your Honor, this chat shows their

15 discussion about trading on two different occasions.  One is

16 right at the beginning where the other user is asking him to

17 trade.  They're talking about how trading just involves the

18 same pictures over and over, and then there's another request

19 to trade to show that he is genuine.

20           The other user already sends him three images before

21 the defendant proves he's genuine, and I believe this trade

22 does not pertain to being law enforcement or not because the

23 other user has already sent images without any confirmation of

24 not being law enforcement, but the trade is child pornography

25 in exchange for other child pornography.

1          THE COURT:  Indeed.  It meets each of the elements

2   that's described, which is an agreement, either explicitly or

3   implicitly, in this case explicitly, for the knowing

4   distribution of child pornography for the purposes of obtaining

5   something of valuable consideration from the other party, which

6   in this case was an exchange of pornography.  I believe the

7   five-level increase is appropriately scored.

8          With the multi-count adjustment, it increases the

9   guideline range.  I believe that it's correctly scored.  Do you

10  have any arguments to the contrary, Mr. Melton?

11          MR. MELTON:  No.

12          THE COURT:  Is the Government satisfied with the

13  report?

14          MS. POP:  Yes, Your Honor.

15          THE COURT:  And, Mr. Mose, I just want to confirm,

16  you've had a chance to read it?

17          THE DEFENDANT:  Pardon?

18          THE COURT:  Have you had a chance to read the report?

19          THE DEFENDANT:  Yes, I have.

20          THE COURT:  Does it appear accurate and complete to

21  you?

22          THE DEFENDANT:  There were a couple of areas that I

23  was -- that were wrong, but they were clerical, so it mentioned

24  that I'm divorced, but my ex-wife and I never filed for

25  divorce, things like that, things that don't affect the case.

1          THE COURT:  Do you remain married?

2          THE DEFENDANT:  Yes, I do.

3          THE COURT:  The report should reflect that then.

4  Were there any other points that needed attention, sir?

5          THE DEFENDANT:  It mentioned at one point that I had

6  three dependencies, but I only have my son and my -- well, my

7  wife's daughter that I pay child support for.  I don't pay for

8  three dependents, unless it's counting myself.

9          THE COURT:  Okay.

10         THE DEFENDANT:  It also stated that --

11         THE COURT:  Let's stop there for just a minute.  Any

12  questions on that point, Mr. Burns?

13         MR. BURNS:  Your Honor, if I recall, I received a

14  record -- yes, I did -- for the divorce was finalized in

15  Saginaw County in 2011, and we do have record of that.

16         THE DEFENDANT:  Okay.  I -- the only reason I say

17  that I wasn't is I never filed.  I never signed divorce papers

18  myself so --

19         MR. BURNS:  Does not deny the fact that the defendant

20  is divorced.

21         THE COURT:  Okay.

22         THE DEFENDANT:  I was not aware of that.

23         THE COURT:  And with respect to the dependent --

24  dependents, did you hear his explanation, Mr. Burns?

25         MR. BURNS:  I did.  There are three open cases right

1    now for child support that are out there against him.

2            THE DEFENDANT:  If the third -- oh, I'm trying to

3    think -- if the third case is for a Madelyn, Maddie or Madelyn,

4    I did a paternity test which showed she was not my child, and

5    if it's for an Adam, he was adopted into a family by the

6    name -- and now goes by the name of Samuel.

7            I was living with a girlfriend at the time of being

8    arrested, and she was pregnant, but I filed a paperwork for --

9    she filed paperwork for an adoption and I released custodial

10   rights to allow that to happen.

11           MR. BURNS:  That may be, Your Honor, but as of the

12   completion of this report, there were three open cases that he

13   was paying -- or supposed to be paying on for child support.

14           THE COURT:  That will remain.

15           Any other issues, sir?

16           THE DEFENDANT:  My only concern was the statement

17   that was made was the age preference, that it stated seven to

18   eight years old.  I know the difference between wanting to be

19   with a 7- and 8-year-old and a 12-year-old's not much, but in

20   the prison system it makes a big deal with other inmates, and

21   the treatment I'll receive while incarcerated and afterwards.

22   I was concerned with that because people had looked up my

23   paperwork already and were incredibly violent towards me.

24           THE COURT:  Specifically the information is located

25   where in the report?

```
 1              THE DEFENDANT:  I'm not exactly sure, Your Honor.
 2              THE COURT:  And when you say people were looking
 3  up --
 4              THE DEFENDANT:  They term it as "running your
 5  plates", and what they do is they go online and they pull up
 6  your paperwork, and they -- they read through your paperwork.
 7  Your -- in certain facilities you actually have to present
 8  paperwork to be allowed to go outside, and the wording in
 9  certain paperwork can actually cause you to be hurt by other
10  people or threatened, bribed or things like that.
11              I was just -- I know it's not much of a difference
12  with the act of what I did, but for people in that world, it
13  makes a big difference to them in the system.
14              THE COURT:  I do recall reading it.  I'm actually
15  trying to locate the information and the source of the
16  information in the report.  Are you familiar with it,
17  Mr. Melton?
18              MR. MELTON:  Pardon me?
19              THE COURT:  Are you familiar with what he is -- the
20  location of --
21              MR. MELTON:  I think I remember seeing it in the
22  report.  I'm trying to locate it.
23              THE DEFENDANT:  I just -- because when I was asked by
24  law enforcement, if I remember correctly, I believe I said that
25  my preference was 10 to 12 years of age.
```

```
 1              MR. MELTON:  In paragraph 16, last sentence.
 2              THE COURT:  The last sentence in paragraph 16?
 3              MR. MELTON:  Yes.
 4              THE COURT:  Which in my report was, "He stated he
 5   masturbated to child pornography and his youngest age
 6   preference was seven or eight years old."
 7              THE DEFENDANT:  Yes.  That's -- I had viewed and
 8   masturbated, that's correct, to the age, but what the age
 9   preference was not -- I stated to the officers that it was 10
10   to 12, but I had looked at as young as eight years old when
11   masturbating.
12              THE COURT:  So do you think the officers recorded it
13   incorrectly?
14              THE DEFENDANT:  I'm not sure what happened honestly,
15   Your Honor.
16              THE COURT:  And was it the officer's description of
17   the communication by the defendant?
18              MR. BURNS:  Yes.  Ms. Pop can probably speak better
19   to this but I believe this was all in the discovery material.
20              MS. POP:  Yes, Your Honor.  I believe there's a
21   recording of the interview, but also there was a report written
22   about this interview, and there's also additional chats where
23   he particularly speaks about raping eight-year-olds, so I don't
24   believe it would be inaccurate either way.
25              THE COURT:  The report will remain as written.
```

1           Anything else, sir?

2           THE DEFENDANT:  No, Your Honor.  I don't believe

3 there was.

4           THE COURT:  All right.  The Government satisfied with

5 the report?

6           MS. POP:  Yes, Your Honor.

7           THE COURT:  I believe we have already confirmed that.

8           Mr. Melton, any remarks that you'd like to make on

9 Mr. Mose's behalf?

10           MR. MELTON:  Well, Your Honor, as I said -- as I

11 stated in the sentencing memorandum, some clients have

12 different reactions when it comes to sentencing and pleading

13 guilty.  For Mr. Mose, this was a big relief for him.  He feels

14 there was no way he was ever going to go to trial under any

15 circumstances.  He wanted to unburden himself of this.  He --

16 that's why he immediately, when he was approached by law

17 enforcement, from my understanding, from what I have and what

18 he's told me and the discovery I had, he's turned over

19 everything immediately.

20           He didn't contest anything.  He gave them the

21 computers, the phone.  He admitted everything right away, and

22 he tells me that he -- when he did that, he felt a great sense

23 of relief to finally have gotten this dark secret out, and too

24 bad he didn't do it before he was acting out on it, but I think

25 it was when he was -- when he did do this, act out and

1  victimize that 12-year-old girl, I think that's when he

2  realized this is not -- this isn't fantasy.  This is real and

3  he's got to get some help.  Unfortunately, he didn't know what

4  to do at that point.

5        He feels -- the only thing he's ever told me, and his

6  family is here as well, he's told them, is what a great sense

7  of remorse and relief he has that he's finally been exposed.

8  He -- his prior attorney tried to get a proffer with the

9  Government and they weren't interested.  This is fine.  I

10  understand.  I can understand why.

11        He asked me to, even if he wasn't going to get any

12  consideration, if he could talk to an officer to see if there's

13  anyway he could possibly help, even if the judge would never

14  know about it, and even if he didn't get any consideration

15  towards his sentence.

16        He's known for a long time that this is -- that this

17  is wrong and that he needed help, he needed out of this, and I

18  think that the fact getting caught, and he knows he's going to

19  pay a severe penalty no matter what the Court does here today,

20  he knows -- he feels at least -- at least he's out of this

21  world, out of this situation.

22        I know everybody says they express -- they feel

23  remorse when they're being sentenced, but he's expressed

24  remorse from the very beginning.  I think from the very

25  beginning he was encountered by law enforcement.  He had a

1  right to remain silent.  He didn't do it, he didn't take it.

2  He confessed to his mother.  He confessed to other members of

3  his family.  He didn't have to do that.  He could have said,

4  you know, hey, talk to my lawyer, get search warrants.  He

5  didn't do any of that.  He just said take it, you got -- you

6  caught me, thank God, I'm out of this, and I've been exposed,

7  and he -- it was a big -- I think it was a big relief off of

8  his shoulders.

9          So, you know, I hope the Court would -- would take

10 that into consideration the fact that he was so cooperative,

11 and everything he's done, I think since he was encountered, I

12 think corroborates that, Judge.  That he feels remorse.  Like I

13 said, he didn't -- he didn't ask for -- didn't ask for a lawyer

14 or anything, and he had a right to do that, and he knew he had

15 a right to do that.

16         But he wanted to confess, he wanted to get it off --

17 he wanted to get it off -- get that weight off of him, and he

18 wanted to confess about the girl, and he wanted to -- and he

19 feels horribly about that.  He tells me that this girl was

20 victimized twice in that situation.  She was victimized by the

21 guy that introduced them.  He told her to, hey, lie about your

22 age because, you know, maybe -- maybe otherwise he might be

23 worried about this.

24         So there was some relationship going on with this

25 other person she was with as well, and subsequently he feels

1    terrible about that, that he facilitated, and he realized

2    afterward that he victimized this girl.  This girl was

3    victimized twice, and he helped facilitate that, and he feels

4    remorseful about -- remorseful about that.

5            And he understands he also had an encounter with

6    his -- to maybe tell you about with one of his roommates.  He

7    found out after the search warrant -- not the search warrant,

8    but after he'd been caught and he turned everything over, after

9    the -- his roommate said that she'd been -- he or she had been

10   a victim of child trafficking and that had been victimized in

11   some way in this -- in this -- in this arena.  And then

12   realized, you know, this is not a -- he understands this is not

13   a -- made him realize -- he told me this is not a victimless

14   crime.  This is not just looking at images on a computer

15   screen.  This creates a market for something that leads to the

16   exploitation of children, and he explains to me that he

17   understands that.

18           So really nothing else I can say.  I know he wants to

19   speak on his own behalf, Judge.  Thank you.

20           THE COURT:  Thank you very much.  Appreciate your

21   remarks.

22           Mr. Mose, anything that you would add?  I'd

23   appreciate it if you would use the podium please.

24           THE DEFENDANT:  Pardon?

25           THE COURT:  If you would use the podium, I'd

1  appreciate it.

2        THE DEFENDANT:  Can I get some tissue, please?  I

3  inherited my mother's nature of crying.  Thank you.

4        Originally -- originally I had written something I

5  wanted to read, but I just feel like it's just trying to make

6  what I did into an excuse and trying to make the word "sorry"

7  to be enough, and it's not right.

8        Like my lawyer said, Mr. Melton, there's a

9  12-year-old -- well, now 17-year-old girl's out there in the

10  world who is suffering because of what I and another man did.

11  I didn't know she was 12, but it doesn't change what I did, and

12  there's -- there's no way I could ever make up for that, and I

13  know that.

14        I remember when the officers came, I couldn't -- I

15  couldn't stop telling them.  I had to.  That day I called my

16  mother because I couldn't live with this anymore.  I've wanted

17  to quit so many times.  Mr. Burns mentioned it in my PSI that I

18  knew this was wrong, that's why I kept deleting things, and

19  he's right.  But I don't know why I kept going back to it.  I

20  didn't want to, but I did.  Again, there's no excuse for it.

21        I'd give anything to go back, take it all away, not

22  because of what's going to happen to me -- I did something

23  wrong and I should be punished -- but because of the child

24  that's out there and the fact that I could have reported the

25  abuse she was going through and I didn't.  The fact that I

1  could have reported every single one of the people that I came

2  across and I didn't.  I helped them, I encouraged them, and I

3  was a part of it.  There's no excuse.

4         I have a 10-year-old son.  I don't have a right to be

5  this person that I was.  I'm a parent.  I'm supposed to protect

6  children, not hurt them.  I want help.  I've wanted help for so

7  long, and I've been too scared to ask for it.  I don't have an

8  excuse.  Now my family knows, you know, the whole world can

9  know, and I need that because there's no excuse.  There's no

10 hiding anymore.  I don't have to.  I can tell my mom I'm

11 struggling, please help me.

12        I just wish five years ago I knew I could have said

13 that.  I should have known.  She's my mother.  She's always

14 been there for me.  He's my brother.  He's been there for me,

15 and I didn't trust him, and because of that, I hurt someone.

16 And more than her, there are all of those children that are out

17 there that the only reason they were victimized is because

18 people like me looked at it, that there's people paying for it.

19        I've lived with them.  I spent seven months with a

20 man who did things.  I've had nightmares about the things he

21 told me, and I used to talk to these people like they were my

22 friends.  I wish I could take it all away.  I do.  Again, like

23 I said, it's not because of what's going to happen to me.  It's

24 because somewhere there's a 17-year-old girl who's never going

25 to be the same, and I've seen the face of that child.

1          THE COURT:  You have described --

2          THE DEFENDANT:  Pardon?

3          THE COURT:  You have described, and there are

4   described in the context of the presentence reports, any number

5   of circumstances where the gravity of the conduct that you have

6   just outlined here could have been stopped, where you made

7   independent judgments to continue.  How do you describe your

8   inability to control any kind of impulsive bad behavior?

9          THE DEFENDANT:  I don't know how to explain it,

10  because anyway I try to explain it would just sound like I'm

11  making an excuse.  I don't know why I didn't stop.  I honestly

12  don't.  I wish I had.

13         THE COURT:  I appreciate your remarks.

14         THE DEFENDANT:  Pardon?

15         THE COURT:  I said, I appreciate your remarks.  Thank

16  you.

17         Government have any remarks?

18         MS. POP:  Yes, Your Honor.  The Government has

19  detailed a lot of the circumstances of the case in the

20  sentencing memorandum, but with regard to the current claim

21  that he did not know this victim was 12-year-old, our evidence

22  proves the contrary; not only the victim has been interviewed

23  and stated that her profile listed her correct age, but also

24  statements of the defendant to, again, other Kik users

25  detailing in actually very great detail what had happened with

1    a 12-year-old based on the interview with the girl and with the

2    defendant -- his detailing what happened with her and basically

3    he's saying that he messed around with a 12-year-old and then

4    gives all of the details that we have about the offense to a

5    Kik user in 2018 in June, so he knew.

6            He provided extensive detail, and there's other

7    circumstances when he provides just about the same amount of

8    detail about the rape of an 8-year-old.  We have not been able

9    to identify that person, but we have identified a person he was

10   exchanging these messages with, and identified a location where

11   they were planning to take a girl if they were able to kidnap a

12   young girl and take her there for sexual exploitation.  This is

13   all based on the detailed conversations and messages that he

14   was exchanging with others.

15           THE COURT:  Thank you.

16           I don't see any particular need to further underscore

17   the gravity of the misconduct involved in bringing you into

18   court, Mr. Mose.  You're very concerning from a pure public

19   safety perspective.  You appear to have no moral ability to

20   govern your behavior, and the sentence needs to reflect and

21   underscore the public safety issues that you reflect.

22           We gave earlier attention to the Sentencing Reform

23   Act and specifically the advisory guidelines that apply to

24   Mr. Mose.  I've also very briefly sought to underscore the

25   primary consideration of the Court in imposing sentence.  We

1  commit the gentleman to the custody of the Bureau of Prisons

2  for a term of 240 months with respect to Count One and 290

3  months for Count Three to run concurrently.

4         Upon Mr. Mose's release from custody, he is to be

5  placed on supervised release for a term of five years to run

6  concurrently with respect to both offenses.

7         He's ordered to pay the statutory assessment of $200.

8  He is to pay the Justice for Victims Trafficking Act assessment

9  of $5,000.  It's due presently.  We'll waive the imposition of

10  a fine, costs of incarceration and costs of supervision.  He

11  does not have the financial resources to reimburse the Federal

12  Government.

13         He's ordered to pay restitution payable to the clerk

14  of court for disbursement to the victims that will be

15  identified and in the amounts that will be identified for a

16  combined restitution amount of $18,000, which is also due

17  presently.

18         Penalties and interest will not accrue on the

19  balance.  The Court will inform the clerk of the restitution

20  beneficiaries and the addresses to be included in the judgment

21  of sentence.

22         Drug testing is ordered.  The defendant is also to

23  cooperate with the collection of a DNA sample as directed by

24  his probation officer.  While he is on supervision, he is to

25  abide by the standard conditions of supervised release that

1   have been adopted by the United States District Court for the

2   Eastern District of Michigan.  He's also to comply with the

3   following additional special conditions:

4           He's to comply with the requirements of the Sex

5   Offender Registration Notification Act as directed by his

6   probation officer, Bureau of Prisons or any state offender

7   registration agency in the location where he's residing,

8   working or a student, or where he was convicted.

9           He is to participate in a sex offense specific

10  treatment program and follow the rules and regulations of the

11  programs.  He is not to have direct contact with any child that

12  he knows or reason to know to be under the age of 18, including

13  his own children, without permission of the probation officer.

14  Direct contact includes any written communication, in-person

15  communication or physical contact.  It does not include

16  incidental contact during the ordinary course of daily

17  activities in public places.

18          He is to participate in the Computer Internet

19  Monitoring Program administered by the United States Probation

20  Department.  He's also to abide by the monitoring program

21  participation agreement that is in effect at the time of his

22  supervision.  He's to comply with any amendments to the program

23  during that term of supervision.

24          He is to notify anyone that he's dating or intending

25  to marry with a minor child under the age of 18 of the fact of

1   his conviction.

2          He is not to purchase, sell, view or possess images

3   in any form of media or live venue that depict pornography,

4   sexually explicit conduct, child erotica or child nudity.  He

5   is not to patronize any place where that material or

6   entertainment is available.

7          He is to have his employment preapproved by the

8   Probation Department.  He is not to be employed at or

9   participate in any voluntary activities that involve contact

10  with minors under the age of 18 or adults with disabilities

11  without prior approval of his probation officer.

12         He is to have all of his residences preapproved by

13  the Probation Department and he must not provide care or live

14  in a residence where children under the age of 18 or adults

15  with disabilities also reside without prior approval of his

16  probation officer.

17         He is to submit to periodic polygraph testing at the

18  direction of his probation officer as a means to insure that

19  he's in compliance with the requirements of supervision and

20  treatment.

21         He is not to have contact, directly or indirectly,

22  with any victim or witness involved in this case unless

23  approved by the probation officer.

24         He is not to incur any new credit charges or open

25  additional lines of credit without the approval of his

1  probation officer.  He is to notify the Court of any changes in

2  his economic circumstances that might affect his ability to pay

3  any of the financial penalties.

4          He is to provide his probation officer with access to

5  any requested financial information and authorize the release

6  of any financial information.  Probation Office may share any

7  of the financial information with the US Attorney's Office.

8          Mr. Melton, any questions concerning the terms of the

9  sentence or objections that we've not had an earlier chance to

10 give attention to?

11         MR. MELTON:  No, Your Honor.  Thank you.

12         THE COURT:  Any from the Government?

13         MS. POP:  No, Your Honor.  We would just ask that the

14 forfeiture be placed on the record.  I believe the defendant

15 has entered -- there's a consent that was filed last week for

16 the property that contained child pornography to be

17 forfeited --

18         THE COURT:  Yes.

19         MS. POP:  -- and we would like that also to be

20 included in the defendant's judgment, and we would also move to

21 dismiss Count Two of the indictment.

22         THE COURT:  The forfeiture information was furnished

23 to Ms. Winslow.  We have that information.  It will be included

24 with the judgment of sentence.

25         The dismissal of the additional charges, which will

1  be without objection from the defense --

2           MR. MELTON:  That's correct.

3           THE COURT:  -- and with the Court expressly noting

4  our acceptance of the plea arrangements -- plea agreement in

5  the case.

6           One concluding matter is the appeal waiver.  It

7  provides that the defendant would waive any right that he would

8  have to appeal his conviction on any grounds.  It further

9  provided if the defendant's sentence of imprisonment did not

10 exceed 293 months, the defendant would also waive any right

11 that he had to appeal his sentence on any grounds.

12          Have you had a chance to review that with Mr. Mose,

13 the appeal waiver?

14          THE DEFENDANT:  Yes.

15          THE COURT:  Any additional business, Mr. Melton?

16          MR. MELTON:  No, Your Honor.

17          THE COURT:  Ms. Pop?

18          MS. POP:  No, Your Honor.

19          THE COURT:  Good luck, Mr. Mose.  Record's closed.

20          (At 4:34 p.m., court recessed.)

21

22

23

24

25

```
1                          * * * * *

2                    C E R T I F I C A T E

3        I certify that the foregoing is a correct transcript
         from the proceedings in the above-entitled matter.
4

5                          Carol M. Harrison

6   Date: 5-19-2020       Carol M. Harrison, RMR, FCRR
                          Official Court Reporter
7                         United States District Court
                          Eastern District of Michigan
8                         1000 Washington Avenue
                          Bay City, MI  48708
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

US v. Mose - Sentencing - September 12, 2019